# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

LARISSA SHELTON AND GREGORY
BOHUS, on behalf of themselves and
others similarly situated,

               Plaintiffs,

vs.

RESTAURANT.COM INC

               Defendant.

Civil Action

Case No.:10-cv-000824(JAP)(DEA)

---

## BRIEF IN REPLY TO DEFENDANT'S OMNIBUS OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS

---

The Wolf Law Firm, LLC
1520 U.S. Highway 130 – Suite 101
North Brunswick, NJ 08902
(732) 545-7900 - phone
(732) 545-1030 - fax

Law Office of Christopher J. McGinn
75 Raritan Ave. - Suite 220
Highland Park, NJ 08904
(732) 937-9400 – phone
(800) 931-2408 – fax

Lite DePalma Greenberg, LLC
570 Broad Street, Suite 1201
Newark, NJ 07102
(973) 623-3000 – phone
(973) 623-0858 – fax

*Co-Counsel for Plaintiffs*

# Table of Contents

Table of Authorities ............................................................................. iii

I.  Defendant has failed to explain how setting the civil penalty at the $100 minimum can meaningfully serve the TCCWNA's purposes of punishment and deterrence. ..................................................................................1

II. Defendant's Opposition to the Motion for Fees and Costs relies almost entirely on the false premise that Plaintiffs "lost" this case in which they won every appeal, won their TCCWNA claims, made important new law, and caused Defendant to reform its practices and provide relief to other consumers. Plaintiffs' counsel is entitled to full fees plus a lodestar enhancement.....................................................................................8

III. The portions of Defendant's brief relying on lack of evidence should be stricken. ...................................................................................23

IV.  The award of attorneys' fees should include time spent reviewing and replying to Defendant's opposition to the pending motions..........................24

Conclusion.......................................................................................25

Appendix of Cases Cited by Defendant Categorized by Bases of Distinguishability ............................................................................26

# Table of Authorities

## Cases

*Abrams v. Lightolier, Inc.*, 50 F.3d 1204 (3d Cir. 1995) ...........................................22

*All Pro Maids, Inc. v. Layton*, 2004 Del. Ch. LEXIS 192 (Del. Ch. Dec. 20, 2004) ................................................................................................................21

*Apple Corps. v. Int'l Collectors Soc'y*, 25 F. Supp. 2d 480 (D.N.J. 1998) .............22

*Barfield v. N.Y. City Health & Hosps. Corp.*, 537 F.3d 132 (2d Cir. 2008) ...........26

*Beck v. Gomez*, 2007 N.J. Super. Unpub. LEXIS 671 (App. Div. Nov. 9, 2007) ...28

*Bohus v. Restaurant.com, Inc.*, 784 F.3d 918 (3d Cir. 2015) .......................... passim

*Buckhannon Bd. & Care Home v. West Virginia Dep't of Health & Human Resources*, 532 U.S. 598 (2001) .........................................................................21

*Chen v. Jin Holding Group, Inc.*, 2012 U.S. Dist. LEXIS 11570 (S.D.N.Y. Jan. 31, 2012) ...........................................................................................................27

*Chesapeake Bay Foundation v. Gwaltney of Smithfield*, 611 F.Supp. 1542 (E.D. Va. 1985) ..............................................................................................................3

*City of Burlington v. Dague*, 505 U.S. 557 (1992) .................................................22

*Dellarussiani v. Ed Donnelly Enters.*, 2010 U.S. Dist. LEXIS 69867 (S.D. Ohio June 16, 2010) ........................................................................................................26

*DiNizio v. Scotch Plains Tp.*, 2010 U.S. Dist. LEXIS 72212 (D.N.J. July 19, 2010) ................................................................................................................27

*Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130*, 657 F.2d 890 (7th Cir. 1981) .......................................................................................................18

*Eubank v. Pella Corp.*, 753 F.3d 718 (7th Cir. 2014) ..............................................28

*Farrar v. Hobby*, 506 U.S. 103 (1992) ....................................................................27

*Furst v. Einstein Moomjy, Inc.*, 182 N.J. 1 (2004) .................................................12

*Henderson v. Camden County Mun. Util. Auth.*, 176 N.J. 554 (2003)....................15

*In re Baby Prods. Antitrust Litig.*, 708 F.3d 163 (3d Cir. 2013) .............................27

*In re Johnson & Johnson Deriv. Litig.*, 2013 U.S. Dist. LEXIS 180822 (D.N.J. June 13, 2013) ........................................................................................................22

*Incollingo v. Canuso*, 297 N.J. Super. 57 (App. Div. 1997) ...................................19

*Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694 (3d Cir. 2005) ...........8

*Jama v. Esmor Corr. Servs.*, 577 F.3d 169 (3d Cir. 2009) .....................................14

*Jones v. Hayman*, 418 N.J. Super. 291 (App. Div. 2011).......................................13

*Kent Motor Cars, Inc. v. Reynolds & Reynolds Co.*, 207 N.J. 428 (2011)...............2

*Kidd v. Conrail* (*In re Paulsboro Derailment Cases*), 2013 U.S. Dist. LEXIS 143769 (D.N.J. Oct. 4, 2013) ........................................................................15

*Klein v. City of Laguna Beach*, 810 F.3d 693 (9th Cir. 2016) ..................................14

*Kluczyk v. Tropicana Prods., Inc.*, 368 N.J. Super. 479 (App. Div. 2004) ..............9

*Lettenmaier v. Lube Connection, Inc.*, 162 N.J. 134 (1999) ...................................17

*Lockley v. Turner*, 344 N.J. Super. 1 (App. Div. 2001) ............................... 16, 19, 20

*Manahawkin Convalescent v. O'Neill*, 426 N.J. Super. 143 (App.Div. 2012) ........14

*Mars Area Sch. Dist. v. C. L.*, 2015 U.S. Dist. LEXIS 163605 (W.D. Pa. Dec. 7, 2015) .....................................................................................................................22

*Marx v. Gen. Revenue Corp.*, 133 S. Ct. 1166 (2013) ..............................................22

*Mason v. City of Hoboken*, 196 N.J. 51 (2008) ................................................. 13, 21

*McAfee v. Boczar*, 738 F.3d 81 (4th Cir. 2013) ......................................................27

*McDonnell v. United States*, 870 F. Supp. 576 (D.N.J. 1994) .................................26

*MD Mall Assocs., LLC v. CSX Transp., Inc.*, 715 F.3d 479 (3d Cir. 2013) ...........23

*Montgomery v. Kraft Foods Global, Inc.*, 2015 U.S. Dist. LEXIS 24533 (W.D. Mich. March 2, 2015) .........................................................................................27

*Morano v. Intercontinental Capital Group, Inc.*, 2013 U.S. Dist. LEXIS 12621 (S.D.N.Y. Jan. 24, 2013) .....................................................................................27

*N. Bergen Rex Transp. v. Trailer Leasing Co.*, 158 N.J. 561 (1999) .....................27

*Oshana v. Coca-Cola Co.*, 487 F. Supp. 2d 961 (N.D. Ill. 2007) ...........................10

*P.G. v. Brick Twp. Bd. of Educ.*, 124 F. Supp. 2d 251 (D.N.J. 2000) ....................22

*Packard-Bamberger & Co., Inc. v. Collier*, 167 N.J. 427 (2001) ...........................27

*Pearson v. NBTY, Inc.*, 772 F.3d 778 (7th Cir. 2014) .............................................27

*Perkins v. New Orleans Athletic Club*, 429 F. Supp. 661 (E.D. La. 1976) .............19

*R.M. v. Supreme Court*, 190 N.J. 1 (2007) ..............................................................24

*Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660 (3d Cir. 2016) .............................6

*Red v. Kraft Foods, Inc.*, No. 10-cv-1028 (C.D. Cal. April 29, 2015) ....................26

*Rendine v. Pantzer*, 141 N.J. 292 (1995) ................................................................21

*Rivera v. Salerno Duane, Inc.*, 2010 N.J. Super. Unpub. LEXIS 1515 (App. Div. July 2, 2010) .......................................................................................................27

*Robb v. Ridgewood Bd. of Educ.*, 269 N.J. Super. 394 (Ch. Div. 1993) ................27

*Robert F. Booth Trust v. Crowley*, 687 F.3d 314 (7th Cir. 2012) ...........................28

*Roccisano v. Franklin Tp.*, 2015 U.S. Dist. LEXIS 75622 (D.N.J. June 11, 2015) 26

*Salem Blue Collar Workers Ass'n v. City of Salem*, 832 F. Supp. 852 (D.N.J. 1993) ...............................................................................................................................4

*Schwartz v. Dallas Cowboys Football Club, Ltd.*, 157 F. Supp. 2d 561 (E.D. Pa. 2001) .............................................................................................................. 12, 27

*Scott v. Sunrise Healthcare Corp.*, 1999 U.S. Dist. LEXIS 15073 (N.D. Ill. Sept. 23, 1999) ..................................................................................................26

*Shelton v. Restaurant.com, Inc.*, 214 N.J. 419 (2013) ..................................... passim

*Shepeard v. Quality Siding & Window Factory*, 730 F. Supp. 1295 (D. Del. 1990) 6

*Szczepanski v. Newcomb Med. Ctr.*, 141 N.J. 346 (1995) ................................ 11, 20

*Trimarco v. Trimarco*, 396 N.J. Super. 207 (App. Div. 2007) .................................15

*United States v. ITT Continental Baking Co.,* 420 U.S. 223 (1975).........................3

*United States v. Lecarreaux*, 1992 U.S. Dist. LEXIS 9365 (D.N.J. Feb. 18, 1992) .3

*United States v. Phelps Dodge Industries, Inc.*, 589 F. Supp. 1340 (S.D.N.Y. 1984) ..............................................................................................................................3

*United States v. Simonelli*, 614 F. Supp. 2d 241, 244 (D. Conn. 2008) ...............1, 2

*United States v. Swingline, Inc.*, 371 F. Supp. 37 (E.D.N.Y. 1974).........................3

*United States v. T & S Brass and Bronze Works, Inc.*, 27 ERC 1220 (D.S.C. 1988)3

*United States v. Velsicol Chemical Corp.*, 12 E.R.C. 1417, 1421 (W.D. Tenn. 1978) .............................................................................................................3

*Varacallo v. Mass. Mut. Life Ins. Co.*, 332 N.J. Super. 31 (App. Div. 2000) .........18

*W. Morris Pediatrics, P.A. v. Henry Schein, Inc.*, 2006 N.J. Super. Unpub. LEXIS 104 (App. Div. March 30, 2006) .......................................................................26

*Walker v. Giuffre*, 209 N.J. 124 (2012) ..................................................... 17, 20, 21

*Washington v. Philadelphia Cty. Court of Common Pleas*, 89 F.3d 1031 (3d Cir. 1996) ..................................................................................................................26

*Wolf v. Frank*, 555 F.2d 1213 (5th Cir. 1977) .......................................................19

## Statutes and Court Rules

Fed. R. Civ. P. 54 .....................................................................................................22

New Jersey Gift Certificate Act, N.J.S.A. 56:8-110...................................... 1, 4, 13

New Jersey Truth in Consumer Contract, Warranty and Notice Act, N.J.S.A. 56:12-14, *et seq.*............................................................................................ passim

Truth in Lending Act, 15 U.S.C. § 1601, *et seq.* .......................................................7

I.      **Defendant has failed to explain how setting the civil penalty at the $100 minimum can meaningfully serve the TCCWNA's purposes of punishment and deterrence.**

It is uncontested that, for years, Restaurant.com violated the New Jersey Gift Certificate Act and the TCCWNA by including unlawful expiration provisions in its gift certificates for New Jersey restaurants.[1] Yet Restaurant.com argues that it should face no consequences for this misconduct beyond two $100 penalties because neither of the two named Plaintiffs attempted to redeem their certificates outside of the unlawful one-year expiration period. This attempt to trivialize its own, broad misconduct and to focus instead on the limited harm to the two named Plaintiffs is inapt, however, because the TCCWNA, at N.J.S.A. 56:12-17, imposes a "civil penalty" rather than "statutory damages," and so is primarily concerned with punishing and deterring violators' conduct, rather than compensating actual harm.[2] See *United States v. Simonelli*, 614 F. Supp. 2d 241, 244 (D. Conn. 2008)

---

[1] Compare Wolfe Decl., Exh., D (May 19, 2010 revision of Restaruant.com Terms and Conditions webpage stating "This Restaurant Gift Certificate does not expire" at p. 3, sec. 4), Exh. E (February 16, 2010 revision of Restaurant.com Terms and Conditions webpage stating the gift certificate "Expires one (1) year from date of issue, except in California and where otherwise prohibited by law", at p. 6, sec. 5), Exh. F (March 7, 2004 revision of Restaurant.com Terms and Conditions webpage, stating the certificate "Expires one (1) year from date of issue, except in CA or where otherwise prohibited by law.")

[2] The use of "penalty" was no accident, but was deliberately substituted for the word "damages" in an amendment to the TCCWNA prior to enactment. *Shelton v. Restaurant.com, Inc.*, 214 N.J. 419, 432 (2013) ("The Assembly Commerce, Industry and Professions Committee amended Assembly Bill No. 1660 to change

("A penalty is '[p]unishment imposed on a wrongdoer… esp[ecially], a sum of money exacted as a punishment for either a wrong to the state or a civil wrong (**as distinguished from compensation for the injured party's loss**).")(citing *Black's Law Dictionary* (8th ed. 2004)) (emphasis added); *see also United States v. Ciampitti*, 669 F. Supp. 684, 700 (D.N.J. 1987) (civil penalties are imposed "with the aim of both punishing the defendant[s] and of deterring [them] and others from taking further [illegal] action"). This is exactly how the Third Circuit interpreted the TCCWNA in this very case.

> [T]he New Jersey legislature decided to impose a civil penalty as a "deterrent" to effectuate [the TCCWNA's] purpose — "to prevent deceptive practices in consumer contracts by prohibiting the use of illegal terms or warranties in consumer contracts."

*Bohus v. Restaurant.com, Inc.*, 784 F.3d 918, 930 (3d Cir. 2015) ((citing *Shelton*, *supra*, 214 N.J. at 428 and *Kent Motor Cars, Inc. v. Reynolds & Reynolds Co.*, 207 N.J. 428, 457 (2011)).

The minuscule penalties suggested by Defendant are inconsonant with the punitive and deterrent purposes of civil penalties generally, and the TCCWNA specifically. Courts have recognized that civil penalties are intended to deter future violations by the violator **and by others**, and so they must be set high enough to achieve those purposes:

---

one of the remedies from civil 'damages' of not less than $100 to a civil 'penalty' of not less than $100")

Assessment of the amount of a civil penalty is committed to the informed discretion of the Court. *United States v. ITT Continental Baking Co.,* 420 U.S. 223, 230 n.6 (1975); *United States v. Phelps Dodge Industries, Inc.,* 589 F. Supp. 1340, 1362 (S.D.N.Y. 1984) ("Phelps Dodge"). **In exercising this discretion, the Court should assess a penalty which will serve both a specific and general deterrent purpose, deterring future violations by these defendants and similar violations by others.** See *United States v. T & S Brass and Bronze Works, Inc.,* 27 ERC 1220 (D.S.C. 1988); *Chesapeake Bay Foundation v. Gwaltney of Smithfield*, 611 F.Supp. 1542, 1556 (E.D. Va. 1985), aff'd 791 F.2d 304, 315 (4th Cir. 1986), reversed on other grounds, 108 S.Ct. 376 (1987); *Phelps Dodge*, 589 F. Supp. at 1358; *United States v. Velsicol Chemical Corp.*, 12 E.R.C. 1417, 1421 (W.D. Tenn. 1978); *United States v. Swingline, Inc.*, 371 F. Supp. 37, 47 (E.D.N.Y. 1974) ("*Swingline*"). "**Civil penalties should be large enough to hurt**, and to deter anyone in the future from showing as little concern as [the defendant] did for the need to [comply]." *Phelps Dodge*, 589 F.Supp. at 1367, quoting *Swingline*, 371 F.Supp. at 47.

*United States v. Lecarreaux*, 1992 U.S. Dist. LEXIS 9365, *41-42 (D.N.J. Feb. 18, 1992) (emphasis added).[3]

The $200 penalty that Restaurant.com proposes for itself would not be large enough to feel, much less hurt. It would have *no* deterrent effect on Restaurant.com or other companies that decide to conduct business in New Jersey without making any serious effort to ensure that their contracts comply with New Jersey laws regulating their industries. Such a slap in the wrist, in the context of a TCCWNA

---

[3] *Lecarrueaux* and the cases cited in this passage involve civil penalties under a variety of statutes, including the Environmental Protection Act, the Federal Trade Act, and the Clayton Act. There is no reason why the same principles would not be applicable to the TCCWNA.

case as prominent as this one (at least in terms of authoritative judicial decisions issued) would send a signal to businesses that they may violate the TCCWNA with impunity, entirely frustrating the TCCWNA's purposes of deterrence and punishment, as recognized repeatedly by the New Jersey Supreme Court and the Third Circuit.

Defendant's argument that it should be spared any meaningful penalty because its violations were "technical" and "unintentional" (Db14) is contrary to the summary judgment record, and only serves to illustrate why a stiff penalty is needed to address Defendant's contempt of the New Jersey laws at issue. When this case was filed, the New Jersey Gift Certificate Act was the only New Jersey law specifically regulating Restaurant.com's industry, and the expiration provision limitation was one of only two substantive restrictions imposed on gift certificate sellers (the other being a limitation on dormancy fees). For Defendant to consider its years of flouting the only New Jersey law directly applicable to its industry to be "technical" is not only wrong, but also demonstrates Defendant's continued lack of respect for New Jersey law, and the need for a serious penalty. Similarly, hollow is Defendant's claim that its violations were "unintentional," as the violations would be no less serious if they were caused by complete indifference to New Jersey law than by willful noncompliance. *Salem Blue Collar Workers Ass'n v. City of Salem*, 832 F. Supp. 852, 863 (D.N.J. 1993) ("[I] ignorance of the law is no

4

excuse. That rule 'is 'deeply rooted in the American legal system,' and exceptions to it must not be casually created.'") (citations omitted).

Defendant's opposition fails to address the evidence submitted by Plaintiffs linking the violations at issue (failure to comply with New Jersey gift certificate laws) with Restaurant.com's deceptive marketing and advertising practices. Specifically, Plaintiffs produced evidence that Restaurant.com advertised and sold its products to consumers as "$10 Gift Certificates" and "$25 Gift Certificates," but then admitted in this case that it did not consider them not to be "gift certificates" at all, but something different and less valuable, akin to free supermarket coupons. See Plaintiffs' initial brief on summary judgment, Pb10-14, SoF ¶¶9-10. This scheme apparently led to the violations at issue (disregard of the New Jersey gift certificate law) as well as considerable consumer dissatisfaction. Pb12-13.

In response, Defendant has not bothered to even address this misconduct, instead adopting a "best defense is a strong offense" approach, attacking Plaintiffs and their counsel as avaricious losers. The closest that Defendant offers as evidence against its deceptive practices is a declaration from an executive stating that Restaurant.com offers a "100% satisfaction guaranty," without explaining how this excuses Defendant's conduct, how customers are notified of the supposed guaranty, how claims are made, how many claims have been made or honored

during relevant time period, or any other meaningful information about the supposed guaranty. Thede Decl. ¶8. Again, this declaration does not address Defendant's practices, and is insufficient to oppose summary judgment. *Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 666 (3d Cir. 2016) ("[T]he non-movant may not rest on speculation and conjecture in opposing a motion for summary judgment.")[4]

Defendant's contention that Plaintiff Larissa Shelton is entitled to only one award of statutory damages, even though she had 10 discrete transactions in which Defendant violated the TCCWNA, is contrary to case law interpreting statutes which, like the TCCWNA, provide for a statutory penalty award by reference to a violation rather than by reference to a lawsuit. *See*, *e.g.*, *Shepeard v. Quality Siding & Window Factory*, 730 F. Supp. 1295, 1308 (D. Del. 1990) ( "It is clear that [plaintiff] would be entitled to double the statutory penalty [under the Truth in

---

[4] As discussed under point heading II of this brief addressing the award of fees and costs, Defendant has also failed to submit anything to counter Plaintiffs' evidence showing that this lawsuit caused Defendant to cease its violations of New Jersey law. This, too, militates in favor of a higher civil penalty, because if Plaintiffs are denied an adequate award when they are successful in effecting a far-reaching change in not only one wrongdoer's practices, but an entire industry, it would provide little incentive for other consumers to bring cases under the TCCWNA. *See*, *e.g.*, *Griggs v. Provident Consumer Discount Co.,* 680 F.2d 927, 932 (3d Cir. 1982) ("The [Truth in Lending] Act imposes a civil penalty, the purpose of which is to provide an incentive for private litigants to institute actions and thereby enforce the Act's provisions.").

Lending Act] for disclosure violations if she had entered two transactions.")  A separate TCCWNA violation occurred each time that Defendant entered into a contract with either Plaintiff that contained a violative provision, N.J.S.A. 56:12-15, and the TCCWNA provides for liability for a civil penalty upon occurrence of a violation and not upon the filing of a lawsuit. N.J.S.A. 56:12-17 ("Any person who violates the provisions of this act shall be liable to the aggrieved consumer for a civil penalty of not less than $100.00… This may be recoverable by the consumer in a civil action…").[5]

Finally, Defendant's attempt to impose evidentiary requirements for tort punitive damages claims to the Court's assessment of TCCWNA civil penalties (Db 17) misses the point that the New Jersey Legislature has already decided that violations of the TCCWNA *per se* merit punishment for the purpose of deterring future violation by Defendant and others. As discussed in Plaintiffs' initial brief (Pb16–17), punitive damages cases were cited in support of the proposition that

---

[5] While Defendant is wrong that only one civil penalty may be assessed per lawsuit, Defendant is correct that Plaintiffs are entitled to only one civil penalty award per transaction, even though there were three provisions in its certificates that violated the TCCWNA. Db10. Plaintiffs conceded as such in their initial brief (Pb14), but argued that these multiple violations should be considered by the Court in setting the amount of the civil penalties. Pb14 - 15.

there are no constitutional barriers to the Court's ability to assess very high civil penalties in this case.

**II.     Defendant's Opposition to the Motion for Fees and Costs relies almost entirely on the false premise that Plaintiffs "lost" this case in which they won every appeal, won their TCCWNA claims, made important new law, and caused Defendant to reform its practices and provide relief to other consumers. Plaintiffs' counsel is entitled to full fees plus a contingency enhancement.**

Defendant does not challenge the hourly rates of Plaintiffs' counsel. Nor does Defendant discuss, let alone dispute, any of the RPC 1.5(a) factors. Pb19-32. Finally, Defendant does not contest that the number of hours Plaintiffs' counsel billed was reasonable for the work performed, including two dispositive motions in this Court, two appeals to the Third Circuit, each argued orally, and another proceeding (with two more oral arguments) at the New Jersey Supreme Court.[6]

Instead, Defendant relies almost solely on the claim that Plaintiffs "lost" this case, so their fee should be slashed or reduced to zero. But Plaintiffs in fact won essentially every issue litigated:

> Plaintiffs won a reversal of the 2010 dismissal of their Complaint, which enabled their claim under the TCCWNA to proceed;[7]

---

[6] As discussed *infra*, Defendant does challenge a few time entries. Db52. Since Defendant has not contested the remaining entries, the Court cannot reduce the fee based on those other entries. *See Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 711 (3d Cir. 2005) (absent specific objections, court may not reduce fee).

[7] The Third Circuit upheld the dismissal of Plaintiffs' CFA claim. But that claim was intertwined with the TCCWNA claim, as Plaintiffs have shown. Pb17-18; *see*,

Plaintiffs advocated for the certification of questions to the New Jersey Supreme Court; Defendant opposed that, but the Third Circuit decided to certify questions;

The parties each submitted proposed certified questions to the Third Circuit, and that court essentially adopted Plaintiffs' version;

Plaintiffs won a complete victory on the certified questions in the Supreme Court. *Shelton v. Restaurant.com, Inc*., 219 N.J. 214 (2013);

Plaintiffs then won a reversal of the dismissal of the TCCWNA claim. *Shelton v. Restaurant.com, Inc*., 543 Fed. Appx. 168 (3d Cir. 2013);

After the District Court again granted dismissal, this time holding that the Supreme Court's ruling could not apply retroactively to anyone, even Plaintiffs themselves, Plaintiffs appealed and won a reversal, which allowed retroactive application to Plaintiffs. *Bohus v. Restaurant.com, Inc*., 784 F.3d 918 (3d Cir. 2015);

Plaintiffs were **too successful** on the legal issues; the Third Circuit did not let the case proceed on a class basis because that might lead to a "significant financial impact on Restaurant.com," *id*. at 930;

On remand, Plaintiffs achieved a stipulation of liability by Defendant.

Defendant belabors, with dozens of cases, the idea that fee requests can be reduced for limited success. But not one of those cases involved the circumstances here, where Plaintiffs **succeeded** on the contested issues, and where the inability to

---

*e.g*., *Kluczyk v. Tropicana Prods., Inc*., 368 N.J. Super. 479, 499-500 (App. Div. 2004) (affirming fee award that included time spent on unsuccessful claim where theory was "related" to successful claim and "evidence overlapped"). And the CFA issue did not account for any of Plaintiffs' time after the February 10, 2011 Third Circuit oral argument. Thereafter, all time involved only the TCCWNA claim.

proceed classwide was not due to a failed class certification motion but arose from the Third Circuit's desire to protect Defendant from too much success by Plaintiffs.

Defendant's cited cases all involved (a) plaintiffs who lost their cases, on dispositive motions, motions for class certification, or most of the litigated issues, (b) class action settlements that were rejected as inadequate, so fee requests failed as well, or (c) plaintiffs or counsel who behaved improperly, which adversely affected fees.[8] Plaintiffs here won reversals on both of Defendant's dispositive motions. Class certification was not briefed, but since Defendant's certificates all contained the same unlawful terms, Plaintiffs would likely have won had class certification been litigated. And Defendant stipulated to liability on the TCCWNA claim, obviating a trial.

The case on which Defendant relies most (presumably its strongest case) shows how badly Defendant misses the mark. In *Oshana v. Coca-Cola Co.*, 487 F. Supp. 2d 961, 967 (N.D. Ill. 2007), the plaintiff lost a motion to remand the case to state court, and the defendant won two summary judgment motions in part, and defeated class certification. The rulings against the plaintiff on remand and class certification were affirmed on appeal. Eventually, after "plaintiff's theory of liability failed on every front," the defendant offered judgment, with no admission

---

[8] In lieu of footnotes, plaintiffs' Appendix documents this as to as many of the 75 cases cited by Defendant in the fee section of its brief as space permits.

of wrongdoing, which the plaintiff accepted. *Oshana* is thus utterly unlike the present case, where Plaintiffs achieved the litigation victories described *supra*.

*Szczepanski v. Newcomb Med. Ctr.*, 141 N.J. 346 (1995), declined "to require proportionality between damages recovered and counsel-fee awards even if the litigation, as in [*Szczepanski*], vindicates no rights other than those of the plaintiff." *Id*. at 366. Moreover, *Szczepanski* found that "an overriding public interest" is served by "vindicating the legislative purpose" underlying the statute in suit (there, the Law Against Discrimination). *Id*. Finally, *Szczepanski* directed courts to evaluate "any circumstances incidental to the litigation that directly or indirectly affected the extent of counsel's efforts." *Id*. at 366-67.

Applying *Szczepanski* here, Plaintiffs vindicated more than just their own rights— they established new law that has already begun to benefit other consumers. *See* Pb25-26 (citing new law made and cases relying on that new law). This case "vindicate[ed] the legislative purpose" of the TCCWNA on novel and important issues. And the unique circumstance that Plaintiffs succeeded so well that the Third Circuit had to preclude a class action in order to protect Defendant from the consequences of its own extensive wrongdoing is a circumstance incidental to this case that affected counsel's efforts and justifies a full fee award.

Defendant offers various "spins" to avoid paying any fee. All of them lack merit.

Defendant admits that Plaintiffs achieved a new rule of law, but argues that Plaintiffs' counsel do not deserve payment for that. Db41. The lone case cited for that idea is *Schwartz v. Dallas Cowboys Football Club, Ltd*., 157 F. Supp. 2d 561 (E.D. Pa. 2001). That case involved a class action settlement with an overbroad release and lack of consideration for that release, given "the inadequate nature of the financial compensation" to the class. *Id*. at 577-78. Since the settlement failed, counsel did not earn payment. The present case bears no resemblance to *Schwartz*.

Defendant contends that the Supreme Court's *Shelton* decision "did not vindicate any 'public rights.'" Db42-43. That argument is puzzling. The very quote that Defendant uses to support its position includes as a public right "commercial transactions untainted by fraud or trickery," *id*., which is exactly what the TCCWNA seeks to preserve. Besides, *Furst v. Einstein Moomjy, Inc*., 182 N.J. 1, 11-12 (2004), confirms that vindicating consumer statutes protects a public right.

Defendant also tries to argue that this litigation was not a catalyst for Defendant to change its unlawful practices, but offers no alternative explanation for its sudden decision to remove the violative expiration provision from its gift certificates within a few months of being served with this lawsuit, after years of including the unlawful provision. *See* Pb27-28. As discussed previously (Pb28), this timing creates a rebuttable presumption that the Defendant's change of practices was caused by this lawsuit. *Jones v. Hayman*, 418 N.J. Super. 291, 306

(App. Div. 2011) ("[w]hen... the extent and timing… strongly suggests a causal link between the litigation and the actions taken by defendants, the burden shifts to defendants to show that plaintiffs' suit was not a catalyst for the actions taken") (citing *Mason v. City of Hoboken*, 196 N.J. 51, 80 (2008)). In response, Defendant submitted an affidavit of an executive, Scott Thede, that neither denies that the change was caused by this lawsuit nor identifies alternative causes, but merely attaches the same May 19, 2010 revised terms and conditions page submitted by Plaintiffs, and notes that the revision included a few changes other than the deletion of the one-year expiration provision, without explaining how this is relevant to whether or not this lawsuit caused the deletion of the expiration provision. Thede Decl. at ¶9. The presumption therefore stands, and Plaintiffs have established that their lawsuit caused Defendant to cease its violations of the Gift Certificate Act and the TCCWNA.

Perhaps recognizing that it cannot credibly deny that this lawsuit caused it to stop violating New Jersey law, Defendant argues that even if it did, the Court may not consider that in assessing the Plaintiffs' degree of success when setting a reasonable fee because catalyst theory has typically been applied to bestow prevailing party status where claims have been mooted by the change in practices. Db42 n.19. However, case law provides that effecting cessation of the conduct complained of in a lawsuit is a significant success, appropriately considered in

determining a reasonable fee. *Klein v. City of Laguna Beach*, 810 F.3d 693, 701 (9th Cir. 2016)("[A] court may consider whether the litigant achieved a public goal or accomplished a public purpose with the litigation, including inducing a voluntary change by the defendant, "for the limited purpose of determining a reasonable fee award.") (citation omitted); *Jama v. Esmor Corr. Servs.*, 577 F.3d 169, 176 (3d Cir. 2009) ("[A] district court determining the degree of a plaintiff's success should consider not only the difference between the relief sought and achieved, but also the significance of the legal issue decided and whether the litigation served a public purpose.")

Finally, Defendant's claim that this case bars other customers of Defendant from bringing their own suits, Db43, is wrong. The Third Circuit's ruling in *Bohus* would not be binding in state court, where any potential individual action would necessarily be venued since the amount in controversy would not support removal to this Court. *Manahawkin Convalescent v. O'Neill*, 426 N.J. Super. 143, 156 (App.Div. 2012)(New Jersey courts "are not bound by the opinions of lower federal courts, including the Circuit Court of Appeals.") Moreover, it is not entirely clear that *Bohus* would bar individual cases even if somehow filed in federal court, because the Third Circuit ruled that this case could not proceed as a class action due to the "significant financial impact on Restaurant.com" of a potential class recovery. *Bohus*, 784 F.3d at 930. Individual cases (like the recoveries for the

named plaintiffs that *Bohus* permitted) would not have that same effect, and so the reasoning in *Bohus* should not bar individual cases at all.

Defendant struggles mightily, but unsuccessfully, to escape *Henderson v. Camden County Mun. Util. Auth.*, 176 N.J. 554 (2003). Db36-38. There, the Supreme Court authorized a fully compensatory fee in these very circumstances, where the plaintiff in a class action won the key legal issue, but the Court feared the consequences of that success and thus applied its ruling only to the plaintiff. As *Henderson* and the cases it cited made clear, the "fund in court" doctrine applies even where no "pot of money" is created. 176 N.J. at 564-66 ("fund in court" doctrine "embraces equitable principles"); *see Trimarco v. Trimarco*, 396 N.J. Super. 207, 215-17 (App. Div. 2007) (doctrine applies even if no "pot of money," and includes "intangible benefits"); Pb29-31 (noting defendant's admission that its change in conduct provided customers "more value").[9]

Defendant then resorts to flip-flopping within its own brief. Thus, Defendant first complains that Plaintiffs have submitted such a detailed fee application. Db24-25. But later, Defendant says the application "lacks significant documentary support." Db51. Similarly, Defendant tries to twist *Bohus* into a ruling that denied

---

[9] Defendant's only cited case, *Kidd v. Conrail* (*In re Paulsboro Derailment Cases*), 2013 U.S. Dist. LEXIS 143769, at *18-19 (D.N.J. Oct. 4, 2013), is unhelpful. That was a group of individual suits, not a class action, so that, at the pleadings stage, the matter was "not postured" to produce "benefit for a class of persons that did not contribute to the cost of the litigation," unlike the present case at its pleading stage.

fees. Db35. But six pages later, Defendant admits that "[t]he Third Circuit [in *Bohus*] made no mention of attorneys' fees …." Db41.

Continuing with arguments that its own conduct belies, Defendant complains about the number of attorneys who worked on behalf of Plaintiffs. Db34. But roughly 90% of Plaintiffs' time was incurred by four lawyers, two from The Wolf Law Firm and two from LDG.[10] Defendant too had at least four attorneys working on this case. *See*, *e.g*., *Bohus*, 784 F.3d at 920 (listing four attorneys for defendant, three of whom are or were directors at defendant's firm).

Likewise, Defendant notes that Plaintiffs had more than one attorney at certain hearings. Db34 n.17. But so did Defendant. *See*, *e.g*., ECF No. 50-9, ¶50. Thus, Defendant cannot complain. *Lockley v. Turner*, 344 N.J. Super. 1, 28 (App. Div. 2001) (where two deputy attorneys general appeared at trial, "it comes with ill-grace" for the State to complain that two attorneys billed for handling the trial for plaintiff), *aff'd in part, mod. in part on other grounds*, 177 N.J. 413 (2003).

Defendant's assertion that the few time entries it challenges are improper, Db52, is undermined by the fact that its own counsel has sought compensation in fee petitions for the very same activity. For example, Defendant objects to

---

[10] The additional personnel were all younger lawyers or paralegals. Had their work been done by the more senior attorneys who incurred most of plaintiffs' time, Defendant would have objected that those functions should have been performed by persons at lower billing rates. *See* Db52 (making that very argument).

counsel's billing entries for what it calls "Review of media coverage of case" (Db52) but the Gibbons firm has applied for fees in another matter for the same activity. McGinn Reply Decl., ¶¶7-14, Exhs. A-H (Gibbons firm's fee application in Trump bankruptcy matter that included such entries as "Review and receipt of recent Trump news article," "Review Atlantic City news updates"). Similarly, Defendant attacks an entry for drafting a certification of service along with other documents, but Gibbons has also applied for fees for similar activity. McGinn Reply Decl. Exh. F, at p. 29 (Attorney time record in the Trump matter billing .6 hours and $231 for work described as "Prepare Rule 2004 subpoena to David Hughes and draft notice of Rule 2004 ZD42 30346 JBL examination and certification of service.")

Defendant then attributes the fee application here to the "avarice" of Plaintiffs' counsel. Db33-34, 49 n.20. The New Jersey Supreme Court, however, recognizes that appropriately generous fee awards have nothing to do with avarice, but instead are needed to incentivize attorneys to take on risky, contingent cases that vindicate public interests in consumer statutes, against defendants with vast resources who fight to the death. *E.g.*, *Walker v. Giuffre*, 209 N.J. 124, 139 (2012) (fee-shifting aims to "achieve [the Legislature's] broader public policy purposes of attracting counsel to socially beneficial litigation"); *Lettenmaier v. Lube Connection, Inc.*, 162 N.J. 134, 139 (1999) (CFA fee-shifting seeks "to attract

17

competent counsel to counteract the community scourge of fraud by providing an incentive for an attorney to take a case involving a minor loss to the individual").

Defendant tries to pose as the protector of "consumers, non-attorneys and judicial resources" by opposing "misaligned" fees. Db46. But that is "a bit like permitting a fox, although with a pious countenance, to take charge of the chicken house." *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130*, 657 F.2d 890, 895 (7th Cir. 1981) (making this point about defendants in another class action context). The Court should not be fooled.

Defendant does not like the TCCWNA or its fee-shifting provision, or the fact that defendant got caught violating the TCCWNA and saw its elaborate defenses demolished by the New Jersey Supreme Court. Defendant's motive is purely selfish, the position of a party who did not want to be sued at all or to have to pay any fees to plaintiffs' counsel who vindicated the TCCWNA. *Cf. Varacallo v. Mass. Mut. Life Ins. Co*., 332 N.J. Super. 31, 46 (App. Div. 2000) (noting that defendants do not want to be sued by a class, and that courts must consider that and determine whether defendant's opposition to certification is "realistic").

Defendant's repeated, shrill charges that Plaintiffs made this into a large, protracted case are similarly not realistic. It was **Defendant** who filed *seriatim* motions to dismiss the entire case. The temporary success of Defendant's tactics forced Plaintiffs to respond, and they did, all too successfully, winning reversals of

both dismissal orders and making important new law that protects consumers at large and even benefits sellers, by clarifying for them the scope of the TCCWNA.

Since Defendant's own scorched earth tactics increased the time that Plaintiffs had to spend, Defendant cannot now be heard to complain that Plaintiffs fought back, successfully, rather than giving up as Defendant had hoped. *Lockley*, 344 N.J. Super. at 29 ("There is no doubt that this case was hard-fought on both sides. No quarter was asked and none was given. The State was entitled to assert a vigorous defense and it did so. Fairness requires, however, that plaintiff's counsel be compensated for seeing the matter through to a successful conclusion."); *Incollingo v. Canuso*, 297 N.J. Super. 57, 66 (App. Div. 1997) (counsel's hours were reasonable "given the complexity of the litigation and the extreme motion and discovery practice engendered by defendants"; court also noted that reducing plaintiffs' counsel's lodestar wrongly "encourages excessive litigation tactics by defendants in class actions"); *see also Wolf v. Frank*, 555 F.2d 1213, 1217 (5th Cir. 1977) ("Obviously, the more stubborn the opposition the more time would be required" by the other side); *Perkins v. New Orleans Athletic Club*, 429 F. Supp. 661, 667 (E.D. La. 1976) ("Those who elect a militant defense... [are responsible for] the time and effort they exact from their opponents"). "[P]rolix or repetitious legal maneuvering" that "caused any excess expense to be incurred" cannot be

rewarded by denying plaintiffs recovery for fees necessary to combat defendant's tactics. *See Walker*, 209 N.J. at 132 (quoting *Szczepanski*, 141 N.J. at 366).

Defendant's attack on Plaintiffs' request for an enhancement of whatever lodestar-based fee the Court might award is also meritless. Defendant complains that Plaintiffs might get "an enhancement above 50 percent." Db44. But Defendant concedes that 50% is the top of the range of enhancements for "ordinary" cases, with "typical" cases calling for enhancements of 20-35%. *Id*. (quoting *Walker*, 209 N.J. at 138). This matter was well beyond typical or ordinary, and Defendant does not contest that. Especially since Plaintiffs vindicated important statutory rights, they unquestionably have earned an enhancement, and that enhancement can exceed 50%. *See Lockley*, 344 N.J. Super. at 28-29 (awarding 60% enhancement, 40% for contingency and 20% for vindicating rights).

Finally, Defendant's argument contesting about $3,700 in "court costs" sought by plaintiffs, Db53-55, is also without merit. Defendant's position that "court costs" means only "filing fees" ignores the words actually used by the Legislature. As exemplified by the Consumer Fraud Act, in enacting the TCCWNA, the Legislature could have simply used "filing fees," but chose not to do so. *See* N.J.S.A. 56:8-19 ("reasonable attorneys' fees, filing fees and reasonable costs of suit"); *Shelton*, 219 N.J. at 441 ("We must assume that the Legislature

purposely included every word, and we must strive to give every word its logical effect.").

*All Pro Maids, Inc. v. Layton*, 2004 Del. Ch. LEXIS 192, at *11 (Del. Ch. Dec. 20, 2004), the only decision cited by Defendant that actually attempts to define "court costs," supports Plaintiffs. That case excluded only costs "not directly related to interactions with the court." *See id*. Costs such as parking for court appearances, or lodging the night before an out-of-state court appearance, should be awarded, as they were directly related to interactions with courts.

The cases cited at Db55, which address other types of costs claimed, are inapplicable. They all rely on United States Supreme Court precedent that, under <u>federal</u> statutes, costs not included in 28 U.S.C. §1920 may not be awarded absent express authorization. But the present case is under the TCCWNA, a <u>state</u> statute. The New Jersey Supreme Court has not spoken as to whether costs under a state cost-shifting statute are limited to those costs itemized in a general costs statute. Given the New Jersey Supreme Court's frequent divergence, in state-law based fee cases, from United States Supreme Court fee precedents,[11] that Court would not limit costs as Defendant demands but would award all the costs claimed here.

_____

[11] *E.g.*, *Walker*, 209 N.J. at 140-41 (refusing to follow *Perdue v. Kenny A.*, 559 U.S. 542 (2010), as to contingency fee enhancements); *Mason v. City of Hoboken*, 196 N.J. 51, 72-76 (2008) (declining to follow *Buckhannon Bd. & Care Home v. West Virginia Dep't of Health & Human Resources*, 532 U.S. 598 (2001), as to catalyst doctrine); *Rendine v. Pantzer*, 141 N.J. 292, 338-39 (1995) (declining to

Besides, even under federal statutes such as the Individuals with Disabilities Education Act, which, like the TCCWNA, does not explicitly define "attorneys' fees and costs," plaintiffs are awarded costs such as those contested by Defendant. *See Mars Area Sch. Dist. v. C. L.*, 2015 U.S. Dist. LEXIS 163605, at *23 (W.D. Pa. Dec. 7, 2015) (citing *P.G. v. Brick Twp. Bd. of Educ.*, 124 F. Supp. 2d 251, 266 (D.N.J. 2000), a case cited by Defendant, which awarded copying costs, travel expense, and postage, and cited other cases that have awarded similar costs).

Finally, to the extent that the TCCWNA does not clearly define "court costs," Fed. R. Civ. P. 54(d)(1) should be considered as guidance for determining the fees and costs that should be awarded to Plaintiff.[12] Rule 54(d)(1) permits reimbursement of expenses that are "incurred in order for the attorney to be able to render his or her legal services." *Apple Corps. v. Int'l Collectors Soc'y*, 25 F. Supp. 2d 480, 497 (D.N.J. 1998) (citing *Abrams v. Lightolier, Inc.*, 50 F.3d 1204, 1224 (3d Cir. 1995) (travel time expenses and postage are generally recoverable)); *In re Johnson & Johnson Deriv. Litig.*, 2013 U.S. Dist. LEXIS 180822, at *238 (D.N.J. June 13, 2013) (travel and meals are reimbursable). All of the costs requested by

---

follow *City of Burlington v. Dague*, 505 U.S. 557 (1992), as to lodestar enhancement).

[12] The TCCWNA's penalty provision is mandatory by its terms, using "shall," so it is not superseded by Rule 54(d)(1)'s discretionary award of costs. *See Marx v. Gen. Revenue Corp.*, 133 S. Ct. 1166, 1173 (2013).

Plaintiffs are either directly related to the court or necessary for the legal services rendered and therefore should be awarded.

### III. The portions of Defendant's brief relying on lack of evidence should be stricken.

Throughout its brief, Defendant repeatedly relies on the supposed lack of evidence that Plaintiffs produced on issues such as whether this lawsuit caused Defendant to change its practices (Db41-42), whether Defendant is wealthy enough to justify a large penalty (Db20), whether any consumers were denied redemption under the expiration provision (Db17), whether any consumers benefited from the Defendant's change of practices (Db42), whether Defendant engaged in deceptive sales practices by labelling its products as "Gift Certificates" while considering them not to be gift certificates but merely promotional coupons (Db20).

Yet Defendant refused to provide any discovery after admitting that it violated the TCCWNA, insisting that any and all discovery and other evidence was irrelevant. McDonald Decl., Exh. D. Having successfully evaded discovery on *any* issues based on its claim of irrelevancy, Defendant is judicially estopped from now engaging in evidentiary arguments in opposition to the Plaintiffs' motions. *MD Mall Assocs., LLC v. CSX Transp., Inc.*, 715 F.3d 479, 486 (3d Cir. 2013) ("Judicial estoppel is a judge-made doctrine that seeks to prevent a litigant from asserting a position inconsistent with one that [it] has previously asserted in the same or in a previous proceeding. The doctrine exists to protect the integrity of the

judicial process and to prohibit parties from deliberately changing positions according to the exigencies of the moment.")(internal citations and quotation marks omitted).

### IV.   The award of attorneys' fees should include time spent reviewing and replying to Defendant's opposition to the pending motions.

Plaintiffs' counsel have submitted time records for work performed after the Plaintiffs initial motion papers were filed on April 9, 2016, most of which involved reviewing Defendant's omnibus opposition to the pending motions and the copious authority cited therein, and preparing the omnibus reply.  Plaintiffs respectfully request that this time be added to the lodestar when calculating the fee award.  *See R.M. v. Supreme Court*, 190 N.J. 1, 9 (2007) ("fees for preparing a motion requesting costs and fees, or 'fees on fees,' are recoverable"). This additional lodestar includes the following:  For Lite DePalma Greenberg, LLC, $33,487.50, representing 63.1 hours of attorney time, bringing the firm's total submitted lodestar to $325,517.50 for 466.3 hours. Greenberg Reply Decl, ¶4, Exh. A; for The Law Office of Christopher J. McGinn, $2,714, representing 5.9 hours of attorney time, plus $118.20 in expenses, bringing the firm's total submitted lodestar to  $13,386 for 29.1 hours. McGlinn Reply Decl. ¶15, Exh. I.  For the Wolf Law Firm, LLC, $26,481.50, representing 44.2 hours of attorney time, bringing the firm's total submitted lodestar to $396,911.50 for 669.6 hours. Wolf Reply Decl., ¶5, Exh. A.

**Conclusion**

For the foregoing reasons, and those set forth in Plaintiffs' moving papers, ECF Nos. 49 and 50, Plaintiffs respectfully submit that the Court should grant summary judgment to Plaintiffs, award substantial civil penalties adequate to achieve the TCCWNA's purposes of punishment and deterrence, and award to Plaintiffs' counsel the full lodestar requested, plus an appropriate enhancement, along with costs as requested.

Dated: June 17, 2016

 s/   Henry P. Wolfe
Henry P. Wolfe, Esq.
Andrew R. Wolf, Esq.
THE WOLF LAW FIRM, LLC

Bruce D. Greenberg, Esq.
Phylicia A. Preston, Esq.
LITE DEPALMA GREENBERG, LLC

Christopher J. McGinn, Esq.
LAW OFFICE OF CHRISTOPHER J. MCGINN

Co-counsel for Plaintiffs

## Appendix of Cases Cited by Defendant Categorized by Bases of Distinguishability

The Appendix that follows includes cases cited by the Defendant that are inapplicable for the reasons stated below.  Cases have been placed into one category, although a few may apply, to avoid duplication.

### Plaintiffs lost on dispositive motions:

*Dellarussiani v. Ed Donnelly Enters*., 2010 U.S. Dist. LEXIS 69867, at *2, *26-27 (S.D. Ohio June 16, 2010) (plaintiffs lost on all claims on motion to dismiss or summary judgment, and those rulings were affirmed on appeal; plaintiffs won nothing except a remand for a new chance to seek fees) (Db30); *Washington v. Philadelphia Cty. Court of Common Pleas*, 89 F.3d 1031, 1043 (3d Cir. 1996) (plaintiff lost five out of his nine claims on summary judgment, and lost at trial on his "primary" remaining claim) (Db32); *Roccisano v. Franklin Tp*., 2015 U.S. Dist. LEXIS 75622, at *3-4 (D.N.J. June 11, 2015) (two plaintiffs originally filed thirteen claims each against four defendants; one plaintiff voluntarily dismissed all her claims, the other voluntarily dismissed or had summary judgment entered against her on all but one claim and as to two of the four defendants, and she lost that claim against one defendant at trial) (Db33, 39); *McDonnell v. United States*, 870 F. Supp. 576, 589 (D.N.J. 1994) (plaintiff lost on the majority of his OPRA claims, and "considerable attorney time was spent litigating the numerous claims upon which plaintiff did not prevail") (Db40); *Scott v. Sunrise Healthcare Corp*., 1999 U.S. Dist. LEXIS 15073, at *9, 12 (N.D. Ill. Sept. 23, 1999) (plaintiff lost on all issues "involving any degree of complexity at all") (Db44);

### Plaintiffs lost on class certification:

*Red v. Kraft Foods, Inc*., No. 10-cv-1028 (C.D. Cal. April 29, 2015) (plaintiffs lost three motions for class certification and did not win on any contested issue) (Db27, 45); *Barfield v. N.Y. City Health & Hosps. Corp*., 537 F.3d 132, 152 (2d Cir. 2008) (plaintiff lost her motion for FLSA collective action certification, failing even to make the "modest factual showing" required for that) (Db29); *W. Morris Pediatrics, P.A. v. Henry Schein, Inc*., 2006 N.J. Super. Unpub. LEXIS 104, at *2-5 (App. Div. March 30, 2006) (plaintiffs lost on class certification, and class issues accounted for most of the attorneys' fees sought) (Db29); *Morano v. Intercontinental Capital Group, Inc*., 2013 U.S. Dist. LEXIS

12621, at *11-13 (S.D.N.Y. Jan. 24, 2013) (plaintiffs lost on motion to decertify the class) (Db30); *Montgomery v. Kraft Foods Global, Inc*., 2015 U.S. Dist. LEXIS 24533, at *2-4 (W.D. Mich. March 2, 2015) (plaintiff dropped one claim after motion to dismiss was filed, lost others on motion to dismiss, and then lost on class certification, which consumed most of the claimed attorney time) (Db30);

**Plaintiffs lost at trial:**

*Farrar v. Hobby*, 506 U.S. 103, 115 (1992) (plaintiff lost because he failed to "prove an essential element of his claim for monetary relief") (Db24, 29, 45); *Packard-Bamberger & Co., Inc. v. Collier*, 167 N.J. 427, 446 (2001) ("[t]he trial court rejected a substantial portion of plaintiffs' claims") (Db32); *McAfee v. Boczar*, 738 F.3d 81, 94 (4th Cir. 2013) (in malicious prosecution/Civil Rights Act case, fee award found excessive where it was based on a deterrence rationale that was inconsistent with jury's decision to make no award for "deprivation of liberty, great inconvenience, great insult and humiliation, and mental anguish" or punitive damages) (Db33); *Robb v. Ridgewood Bd. of Educ*., 269 N.J. Super. 394, 406-07 (Ch. Div. 1993) (plaintiff lost on all but one issue, and most of the discovery, trial, and briefing related to those unsuccessful claims) (Db33); *N. Bergen Rex Transp. v. Trailer Leasing Co*., 158 N.J. 561, 573-74 (1999) (fee petitioner lost on "a substantial portion" of its claim, prevailing on just 51% of its counterclaim) (Db40); (Db33); *Chen v. Jin Holding Group, Inc*., 2012 U.S. Dist. LEXIS 11570, at *5, 10-11 (S.D.N.Y. Jan. 31, 2012) (jury rejected most of plaintiff's claims in "uncomplicated" FLSA case) (Db35); *Rivera v. Salerno Duane, Inc*., 2010 N.J. Super. Unpub. LEXIS 1515, at *8 (App. Div. July 2, 2010) (plaintiff brought nine-count complaint, including for fraud and misrepresentation, but lost on all but parts of CFA and TCCWNA claims) (Db39); *DiNizio v. Scotch Plains Tp., 2010 U.S. Dist. LEXIS 72212, at *3 (D.N.J. July 19, 2010)* (plaintiff lost on three out of four claims at trial) (Db40).

**Plaintiffs' counsel sought fees for inadequate class action settlement:**

*Pearson v. NBTY, Inc*., 772 F.3d 778, 779-80, 781 (7th Cir. 2014) (settlement was essentially without value and was reached after only eight months of work that was mostly "routine pretrial preparation") (Db34, 43, 48); *In re Baby Prods. Antitrust Litig*., 708 F.3d 163, 169-170 (3d Cir. 2013) (settlement rejected where six times as much benefit would go to cy pres recipients as to class members) (Db33); *Schwartz v. Dallas Cowboys Football Club, Ltd*., 157 F. Supp. 2d 561,

577-78 (E.D. Pa. 2001) (overbroad release and lack of consideration for that release, given "the inadequate nature of the financial compensation" to class members led to denial of settlement approval) (Db41).

**Plaintiff or plaintiff's counsel engaged in misconduct:**

*Eubank v. Pella Corp.*, 753 F.3d 718, 721-24, 728 (7th Cir. 2014) (among other things, lead counsel was son-in-law of lead plaintiff, "a grave conflict of interest," lead counsel was facing disciplinary action that may have led him to settle before discipline was imposed, and settlement "strew[ed] obstacles" before class members who might try to claim its supposed benefits) (Db48); *Robert F. Booth Trust v. Crowley*, 687 F.3d 314, 319-20 (7th Cir. 2012) (derivative action was not in shareholders' or corporation's interest, as corporation would actually have been harmed if suit prevailed) (Db45); *Beck v. Gomez*, 2007 N.J. Super. Unpub. LEXIS 671, at *14-16 (App. Div. Nov. 9, 2007) (plaintiff and her husband had testified untruthfully, which could be considered in determining fees) (Db49).